UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

**DEWAYNE L. MCKINNEY**                     **CIVIL ACTION NO. 23-0383**

**VS.**                                                     **SECTION P**

                                                            **JUDGE S. MAURICE HICKS, JR.**

**BOSSIER MEDIUM SECURITY, ET AL.**        **MAG. JUDGE KAYLA D. MCCLUSKY**

### REPORT AND RECOMMENDATION

Plaintiff Dewayne L. McKinney, a prisoner at Bossier Medium Correctional Center proceeding pro se and in forma pauperis, filed this proceeding on approximately March 24, 2023, under 42 U.S.C. § 1983. He names the following Defendants: Bossier Medium Security, Captain Brad Anderson, Sergeant Peas, Deputy Hattan, and Deputy Barnntte.[1] For reasons that follow, the Court should dismiss Plaintiff's claims.

### Background

Plaintiff worked as an "inside trustee hall man for" Sergeant Donald and Deputy Goss at Bossier Medium Correctional Center.[2] [doc. # 10, p. 1]. "To the best of [his] knowledge, [he] had no problems with" any inmates or deputies. *Id.* at 1.

Plaintiff states that Inmate Joshua Hutto "would tell Sgt. Peas and Deputy Barnntte" what each shift sergeant was doing. [doc. # 10, p. 1]. On December 7, 2022, Inmate Hutto told

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

[2] Plaintiff states that a deputy must "be with a hall worker"; Captain Anderson did not want trustees to be in dormitories without a deputy. *Id.*

Sergeant Peas and Deputy Barnntte[3] that Plaintiff was "back working as a hall man . . . ." *Id.* Hutto allegedly "did this to put Plaintiff in a harmful situation." *Id.* Sergeant Peas and Deputy Barnntte got very upset. *Id.* They then looked at a board[4] and found that Plaintiff was scheduled as a "nighttime hall worker . . . ." *Id.* at 1, 5. Peas and Barnntte waited for Sergeant Smith's night shift. *Id.* at 1. Then, Deputy Charlie Toggle informed Plaintiff that he could work on Toggle's and Smith's night shift. *Id.* Later, Deputy Toggle moved Plaintiff from "C4 Dorm to C3 Dorm," which is allegedly a dormitory for federal inmates and convicted state inmates. *Id.* 1, 4. Plaintiff alleges that this was problematic because he is and was a pre-trial detainee. *Id.* at 1. Toggle allegedly said that "he was doing what" he was told. *Id.* at 4.

Plaintiff claims that he was placed in C3 Dorm "to get jump on [sic]" (i.e., attacked). [doc. # 1]. Sergeant Peas and Deputy Barnntte allegedly targeted him. *Id.* He adds that Sergeant Peas targeted him because of his "color" and because he is a Muslim. [doc. # 10, p. 3]. Peas and Barnntte "wanted to see Plaintiff badly hurt." *Id.*

On December 9, 2022, Inmate Hutto came to C3 Dorm. [doc. # 10, p. 1]. At the time, Plaintiff was speaking to his brother, Jerry McKinney, who was also an inmate. *Id*. Then, approximately nine other inmates "jump[ed]" or attacked Plaintiff and his brother. [doc. #s 1, p. 3; 10, p. 3]. The attacking inmates punched, kicked, and stomped Plaintiff. [doc. #s 1, p. 3; 10, p. 4]. Plaintiff lost consciousness and suffered facial cuts, a fractured face, a fractured nose, and injuries to his eyes. [doc. #s 1, p. 3; 10, p. 3]. Plaintiff states that the "first fight" took place by

---

[3] The undersigned uses Plaintiff's spelling of each Defendant's names.

[4] Plaintiff suggests that the board depicted shift schedules for trustee hall workers. [doc. # 10, p. 5].

2

the "bed area" and the "second fight took place in front of the control booth . . . ." [doc. # 10, p. 4].

Plaintiff and his brother ran to "the control booth to get help[,]" but "no help ever came until [his] brother pass[ed] out[.]" [doc. #s 1; 10, p. 2]. Eventually Deputy Johnson called for help. There are "video cameras" throughout the facility. *Id.* at 2-3. Plaintiff claims, however, that he received no help from Captain Anderson or Deputy Hattan, the deputy in the control booth. [doc. # 10, p. 2]. Plaintiff asks, "What was the control deputy doing that was important . . . [?]" *Id.* at 3. He claims that Hattan failed "to make a very important call to help . . . ." *Id.* at 4. He states that all deputies neglected to provide help. *Id.* at 2.

Plaintiff claims that Captain Anderson "overlooked the serious risk that Sgt. Peas and Barnntte" posed to Plaintiff. [doc. # 10, p. 3].

Plaintiff was transported to a hospital. [doc. # 10, p. 2]. On February 14, 2023, he received surgery. *Id.* at 3.

Plaintiff seeks (1) disciplinary action, including termination of Defendants' employment; (2) an investigation of Bossier Sheriff's Department; and (3) $10,000,000.00 in compensation. [doc. # 1, p. 4].

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[5] *See Martin v. Scott,* 156 F.3d

---

[5] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations

578, 579-80 (5th Cir. 1998) (*per curiam*).  Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2).  Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989).  A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327.  Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless.  *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  Plausibility does not equate to possibility or probability; it lies somewhere in between.  *Id.*  Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim.  *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

---

of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

*Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

## 2. Failure to Protect

To state a failure-to-protect claim, a plaintiff must allege that a defendant's inaction

amounted to deliberate indifference. That is, he must allege that a defendant "knew of and disregarded a substantial risk of serious harm." *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017). A prison official can act "with deliberate indifference if he helps create a risk to an inmate's health or safety." *Adames v. Perez*, 331 F.3d 508, 515 (5th Cir. 2003) (*citing Cantu v. Jones*, 293 F.3d 839, 843-45 (5th Cir. 2002) (upholding a jury verdict against prison officials in a case where the plaintiff claimed that the officials deliberately permitted another inmate to escape his cell and attack the plaintiff)).

A. Sergeant Peas and Deputy Barnntte

Plaintiff alleges that (1) Peas and Barnntte were angry when Inmate Hutto told them that Plaintiff was "back working as a hall man" and/or that Plaintiff was "hired back by Sgt. Donald and Deputy Goss" [6]; (2) that Peas and Barnntte saw that Plaintiff was scheduled as a "nighttime hall worker"[7]; (3) that Deputy Charlie Toggle informed Plaintiff that he could work on Toggle's and Smith's night shift; (4) that Deputy Toggle, at the direction of an unidentified party, moved Plaintiff from C4 Dorm to C3 Dorm, which is a dormitory for federal inmates and convicted state inmates[8]; and (5) federal inmates and convicted state inmates beat Plaintiff in C3 Dorm.

From what the undersigned can discern from Plaintiff's circuitous allegations, it seems he is speculating that Peas and Barnntte must have targeted him because they were angry after Inmate Hutto told them that Plaintiff was "back working as a hall man" and/or that Plaintiff was "hired back by Sgt. Donald and Deputy Goss." Plaintiff's allegations, however, are too tenuous

---

[6] [doc. # 10, pp. 1, 5].

[7] *Id.*

[8] *Id.* at 1, 4.

6

to amount to a plausible claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").

First, Plaintiff does not explain why he believes Hutto's comments angered Peas and Barnntte. And he does not state that Peas and Barnntte were upset *at* him.[9] Second, and more importantly, Plaintiff does not explicitly allege that Peas and Barnntte scheduled him for Toggle's and Smith's night shift. Rather, he speculates that Peas and Barnntte must have done so because one event followed the other. *See Huss v. Gayden*, 571 F.3d 442, 459 (5th Cir. 2009) ("The *post hoc ergo propter hoc* fallacy assumes causality from temporal sequence. It literally means 'after this, because of this' It is called a fallacy because it makes an assumption based on the false inference that a temporal relationship proves a causal relationship."). In other words, Plaintiff muses—but does not explicitly allege—that because Peas and Barnntte were angry prior to Toggle stating that Plaintiff could work on Toggle's and Smith's night shift, Peas and Barnntte must be responsible for scheduling him for that shift.

Even assuming Peas and Barnntte were angry *at* Plaintiff and did schedule Plaintiff for Toggle and Smith's shift, Plaintiff does not explain why or how scheduling him for this shift caused Toggle to move him to C3 Dorm. Nor does he explicitly allege that Peas or Barnntte instructed, asked, or otherwise caused Toggle to move Plaintiff from C4 Dorm to C3 Dorm. He also does not allege that Peas or Barnntte knew that Toggle intended to move Plaintiff or knew that Toggle did move Plaintiff. Rather, Plaintiff again only hypothesizes that Peas and Barnntte

---

[9] *See, e.g., English v. Winn Corr. Ctr.*, 548 F. App'x 287, 288 (5th Cir. 2013) (finding no deliberate indifference where the plaintiff "asserted that the other prisoner was agitated with the guards, not that the other prisoner was angry at him or made any threats against him prior to the attack.").

must have caused Toggle to move him to C3 Dorm because Toggle moved him subsequent to Peas and Barnntte becoming angry.

Further, and even assuming Peas and Barnntte were angry *at* Plaintiff, did schedule Plaintiff for Toggle and Smith's shift, and did instruct Toggle to move Plaintiff to C3 Dorm, Plaintiff does not plausibly allege that Peas and Barnntte knew that the inmates in C3 Dorm intended to attack Plaintiff. He essentially presents a non sequitur: that *because* Defendants were angry at him, inmates attacked him two days later. Plaintiff's theories of causation are simply too attenuated to establish that Peas or Barnntte caused, or otherwise failed to protect him from, harm.[10]

Finally, Plaintiff—either contradictorily or in the alternative—baldly claims that Sergeant Peas targeted him because of his "color" and because he is a Muslim. [doc. # 10, p. 3]. Plaintiff's claim, however, suffers from the same flaws set forth above concerning his first theory of why Peas targeted him: namely, he does not plausibly allege that Peas knew that the inmates in C3 Dorm intended to attack him.

Plaintiff simply speculates without explanation that Peas and Barnntte targeted him for an attack—either because they learned he was "back working as a hall man," because of his "color," or because he is a Muslim.[11] That Peas and Barnntte were allegedly angry after speaking to Inmate Hutto does not plausibly indicate that Peas and Barnntte targeted Plaintiff, assigned

---

[10] *See Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986) ("[N]owhere in this pleading does the plaintiff cite any conduct (or specific omissions) that would causally link the defendants to decedent's death. In order to successfully plead a cause of action in § 1983 cases, plaintiffs must enunciate a set of facts that illustrate the defendants' participation in the wrong alleged.").

[11] *See Adames v. Perez*, 331 F.3d 508, 515 (5th Cir. 2003) (opining, where the plaintiff offered one of several alternative explanations for why an inmate attacked him, that plaintiff essentially offered an inference "based solely on speculation.").

Plaintiff to Toggle and Smith's shift, told Toggle to transfer Plaintiff to another dormitory, or knew inmates would attack Plaintiff. He does not plausibly allege that Sergeant Peas or Deputy Barnntte enabled, arranged, instructed, or otherwise caused the attacking inmates to beat him. More specifically, he does not plausibly allege that Peas or Barnntte knew of and disregarded a substantial risk that the attacking inmates intended to beat him. Tellingly, Plaintiff even alleges that to the best of his knowledge he "had no problems with [any] inmates or deput[ies]." [doc. # 10, p. 1].

In *Mosley v. Anderson*, 503 F. App'x 272, 274 (5th Cir. 2012), for example, the court opined that a plaintiff "proffered no specific factual allegations that establish that the defendants knew of and disregarded a risk to his safety by orchestrating his removal from segregation and his placement in a cell where he could be exposed to an anticipated attack by [another inmate], i.e., he has not alleged any particular facts establishing that the defendants knew that [the inmate] presented a risk of serious harm and purposefully exposed Mosley to that risk." The court opined further: "In effect, Mosley has proffered only his speculation that his attack was the deliberate consequence of a conspiracy involving prison officials' collaboration with an expected assailant; his speculative assertions do not sufficiently demonstrate that the defendants had adequate information to draw an inference that Mosley faced a substantial risk of attack from [the inmate] or that they ignored or exposed Mosley to that risk." *Id.* (internal citation omitted).

Here, at bottom, Plaintiff presents a narrative replete with disparate events and leaps of speculation. The undersigned is sympathetic to Plaintiff's plight, but even construing Plaintiff's allegations liberally and in his favor, they do not amount to a constitutional violation. The Court should dismiss these claims.

B. Captain Anderson and Deputy Hattan

Following the attacks, Plaintiff and his brother ran to "the control booth to get help[,]" but "no help ever came until [his] brother pass[ed] out[.]" [doc. #s 1; 10, p. 2]. Eventually Deputy Johnson called for help.

There are "video cameras" throughout the facility. *Id.* at 2-3. Plaintiff claims, however, that he received no help from Captain Anderson or Deputy Hattan, the deputy in the control booth. [doc. # 10, p. 2]. Plaintiff asks, "What was the control deputy doing that was important . . . [?]" *Id.* at 3. He claims that Hattan failed "to make a very important call to help . . . ." *Id.* at 4. He states that all the deputies neglected to provide help. *Id.* at 2. He claims that Captain Anderson "overlooked the serious risk that Sgt. Peas and Barnntte" posed to him. [doc. # 10, p. 3].

Whether Plaintiff is claiming that Anderson and Hattan failed to protect him from the attacking inmates, that the defendants failed to provide medical care following the attack, or both, he does not plead deliberate indifference.[12] He does not allege with the requisite plausibility that either defendant knew of yet disregarded a substantial risk of harm; rather, he argues that the defendants *should have* known of a risk. At best, as Plaintiff seems to recognize, he pleads possible negligence, appearing to claim that Hattan and Anderson either should have been more vigilant, should have been at their posts, should have monitored the camera feed more

---

[12] Like a failure-to-protect claim, to plead a constitutional violation with respect to a lack of medical care, a plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (*quoting Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)).

10

attentively, or should have called for help sooner. Plaintiff also concedes that he does not know where or what Hattan was doing during or after the attacks, asking, "What was the control deputy doing that was important . . . [?]" [doc. # 10, p. 3]. As above, even Plaintiff did not know he was exposed to a substantial risk of serious harm, alleging that to the best of his knowledge he "had no problems with [any] inmates or deput[ies]." [doc. # 10, p. 1].

"Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference . . . ." *Alton v. Texas A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999). "A state actor's failure to alleviate 'a significant risk that he should have perceived but did not,' while 'no cause for commendation,' does not rise to the level of deliberate indifference." *McClendon v. City of Columbia*, 305 F.3d 314, n.8 (5th Cir. 2002) (*quoting Farmer v. Brennan,* 511 U.S. 825, 837 (1994)); *see Mosley v. Anderson*, 425 F. App'x 343, 344 (5th Cir. 2011) ("To the extent that prison officials were negligent for not preventing the assault, Mosley is not entitled to relief on this basis."). "The failure of employees to notice and stop [an] assault constitutes negligence, not deliberate indifference." *Brumfield v. Natchitoches Par. Det. Ctr.,* 689 F. App'x 309, 310 (5th Cir. 2017).

If Plaintiff intends to pursue negligence claims, he should do so in state court.[13] The Court should dismiss these claims.

---

[13] Plaintiff, a pre-trial detainee, suggests that he should not have been housed in a dormitory for federal inmates and convicted inmates. [doc. # 10, pp. 1, 4]. To be sure, "Housing pretrial detainees with DOC inmates is a violation of their rights 'unless such a practice is reasonably related to the institution's interest in maintaining jail security or physical facilities do not permit their separation.'" *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017) (*quoting Jones v. Diamond*, 636 F.2d 1364, 1374 (5th Cir. 1981)). Here, Plaintiff states that Deputy Toggle moved him to C3 Dorm; however, he does not name Deputy Toggle as a Defendant or otherwise seek relief from Toggle. In addition, while he suggests that Toggle was only following instructions, he does not identify any defendant responsible for the instructions. [doc. # 10, p. 4.].

11

### 3. Equal Protection

Plaintiff alleges without elaboration that Sergeant Peas discriminated, targeting him because of his "color" and because he is a Muslim. [doc. # 10, p. 3]. He does not allege that Peas violated his right to equal protection. Out of an abundance of caution, however, the undersigned liberally construes his allegations as an equal protection claim.

To establish an equal protection claim, a plaintiff must allege that defendants treated "two or more classifications of similarly situated persons" differently.[14] *Duarte v. City of Lewisville, Texas*, 858 F.3d 348, 353 (5th Cir. 2017) (*quoting Gallegos–Hernandez v. U.S.*, 688 F.3d 190, 195 (5th Cir. 2012)). "Once that threshold element is established, the court then determines the appropriate level of scrutiny to apply." *Id.* "Strict scrutiny is required if the [] classification operates to the disadvantage of some suspect class or impinges upon a fundamental right explicitly or implicitly protected by the Constitution." *Id.* at 354 (*quoting Richard v. Hinson*, 70 F.3d 415, 417 (5th Cir. 1995)). "If neither a suspect class nor a fundamental right is implicated, the classification need only bear a rational relation to a legitimate governmental purpose." *Id.* "Under rational basis review, differential treatment must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Hines v. Aldredge*, 783 F.3d 197, 202-03 (5th Cir. 2015) (internal

---

[14] "[T]here is no precise formula to determine whether an individual is similarly situated to comparators." *Lindquist v. City of Pasadena Texas*, 669 F.3d 225, 233 (5th Cir. 2012) (internal quotation marks and quoted source omitted). "The inquiry is case-specific and requires [courts] to consider the full variety of factors that an objectively reasonable . . . decisionmaker would have found relevant in making the challenged decision." *Id.*

quotation marks omitted) (*quoting Madriz–Alvarado v. Ashcroft*, 383 F.3d 321, 332 (5th Cir. 2004)).

"A prisoner . . . cannot base an equal protection claim solely on a personal belief that he was a victim of discrimination. Vague and conclusory allegations [of discrimination] are insufficient to raise an equal protection claim." *Jebril v. Joslin*, 2008 WL 416240, at *8 (S.D. Tex. Feb. 12, 2008) (*citing Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995)).

In *Butts v. Martin*, 877 F.3d 571, 590 (5th Cir. 2017), the plaintiff alleged that a prison official discriminated against him because of his religion. The Fifth Circuit held that the plaintiff did not state a plausible claim because he failed to "identify any other individuals or groups that he claim[ed] were similarly situated but received superior treatment from [the official] . . . ." *Id.*; *see also Moore v. Collins*, 2014 WL 5553646, at *9 (N.D. Tex. Oct. 31, 2014), aff'd, 631 F. App'x 254 (5th Cir. 2016) ("[N]othing in Plaintiff's amended complaint alleg[es] that he was treated differently from similarly situated persons on the basis of his religion.").

Here, as explained above, Plaintiff does not plausibly plead that Peas targeted him for an attack. Even assuming Peas did target him for an attack, he does not state a claim upon which relief can be granted because he fails to identify any individuals or groups that were similarly situated but received superior treatment. While he formulaically alleges, "discriminat[ion]," he does not offer any specific facts to support his claim.[15] The Court should dismiss this conclusory claim.

**4. Entity Unamenable to Suit**

Plaintiff names "Bossier Medium Security" as a defendant. Presumably Plaintiff refers to Bossier Medium Correctional Center.

---

[15] Plaintiff does not claim that Peas infringed his right to practice his religion.

Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ." Under Louisiana law, an entity must qualify as a "juridical person," which is "an entity to which the law attributes personality, such as a corporation or partnership." LA. CIV. CODE art. 24.

Bossier Medium Correctional Center (i.e., Bossier Medium Security) does not qualify as a juridical person; accordingly, the Court should dismiss Plaintiff's claims against this entity.

## Recommendation

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Dewayne L. McKinney's claims be **DISMISSED** as frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 23rd day of May, 2023.

_____
Kayla Dye McClusky
United States Magistrate Judge